David Whitmore on behalf of the appellant, Donald Washington. The sum of the appellant's position in this case is that the district court made factual determinations on a motion for summary judgment, when the standard is that the court was to view the evidence in the light most favorable to the non-movement and draw the inferences in a way that's favorable to the non-movement, and in this case, Mr. Washington was the non-movement. In this instance, we set out three instances. One of the factual conclusions that the district court made was that Wood Group, the appellee, and its employee, Mr. Roberts, that it was not Mr. Roberts' job to inspect the steps, and I clearly asked that to Mr. Roberts, and Mr. Roberts said, I wouldn't say it wasn't my job. And while that's not a double negative, the inference is, it is my job, because he said it's part of my responsibility to make sure everything works on the platform, and if something goes wrong where it could affect the health of somebody, we would take care of it. Doesn't that beg the question of whether the stairway qualifies as equipment? But that is another issue that the court made a factual determination that that was whether it was equipment or not. What Mr. Roberts said is it's his responsibility to make sure everything works on the platform. He just didn't say the pipes and the drill bits and all that stuff. He said everything, and in fact, if we look at equipment, Mr. Roberts had, in fact, repaired steps before on the platform, before this accident. He had the tools to do it. He repaired these very steps after Mr. Washington's accident. That is another issue where we took this word equipment and we narrowed it to just an oil and production equipment, because that is something that was drawn out later on testimony about equipment when, in fact, Mr. Roberts said it's his responsibility to make sure everything works on the platform, and if something goes wrong where it could affect the health of somebody, we would take care of it. The court also concluded that Mr. Roberts did not have control of the steps, and that turned on an interpretation of a couple of cases, Granger and Reeves, that we cited. But in Reeves, Granger, that's the statement that was made in Reeves, but that's not really what the thing was in Reeves. In Reeves, the contractor had already left the job site and wasn't even there when any of these things occurred. In this instance, Wood Group remained on the platform, and we believe that by repairing the steps before the accident and repairing these steps after the accident, a jury could reasonably infer that Mr. Roberts and Wood Group had some semblance of control over the steps. That was not a factual determination. That should have been made on summary judgment. The last issue we had, Your Honor, on that was the, was whether basic premise of tort law, it's in the restatements. It's in Louisiana law, whether one can assume a duty. Even if there was no duty, did Mr. Roberts and Wood Group assume the duty? And that takes into account whether one undertakes to render services to another, which the defendant should recognize as necessary for the protection of a third person. That is absolutely what has occurred in this case. Mr. Roberts testified before and after, before. He took it upon himself to repair steps. That is to render services to others, in this case Fieldwood, the owner of the platform and his borrowing employer, which the defendant should recognize as necessary for the protection of a third person. That's Mr. Roberts' own testimony. I'm going to do whatever I need to do to make sure that everything is safe for the safety of other people. That's the sum of our position, and based upon a de novo review of the evidence, we would ask the court to find that there are factual questions, which should have precluded summary judgment in favor of Wood Group in this instance. Now, I'm not quite sure how things are going to work, because I've never been here with an amicus and a cross appeal, but in terms of what Mr. Everidge is about to get up and say on behalf of Wood Group in their cross appeal, I will first say that it's the plaintiff's position that the issues that Mr. Everidge are going to discuss on the cross appeal were not raised in the district court. We've clearly set out in our brief what was raised in the district court was this Jones versus compression case. Which says the LHWCA, the Longshore Harbor Workers Act, doesn't recognize borrowed servant. But in the Jones case, everybody was a borrowed servant. In this case, only Mr. Roberts is a borrowed servant. Mr. Washington was never a borrowed servant. And they second argued that there was a change in Louisiana law regarding solidary liability which somehow affected the borrowed servant doctrine. Those were the issues in the district court. Now they're here arguing other matters which the district court never considered. And on that basis, Mr. Washington would say that those issues were not properly before the court insofar as Wood Group presents them today. And I'll reserve the rest of my time and allow Mr. Burkow as the amicus to address other issues. Yes, you've saved time for rebuttal. Thank you, Mr. Whitmore. Mr. Burkow? Thank you, Your Honor. Jim Burkow on behalf of amicus curiae, Fieldwood Energy LLC. As an initial matter, I'd like to thank the court for allowing Fieldwood to participate in oral argument before the court on an issue raised in the cross appeal of Wood Group PSN Inc. That being the appeal of the district court's order under federal rule of civil procedure 54B, that Wood Group actually was potentially liable under Louisiana dual employer doctrine for the alleged negligence of Justin Roberts, who was Wood Group's nominal employee and Fieldwood's borrowed servant. The central issue in determining and resolving Wood Group's appeal actually comes down, I would submit, to a choice of law analysis, which is actually a statutory choice of law analysis. Under the Outer Continental Shelf Lands Act, Louisiana law is adopted as the applicable federal law to Mr. Washington's accident, which occurred purely on a platform off the coast of Louisiana. And only to the extent there's an inconsistent federal law would some other result obtain. In other words, if we hypothetically move this accident on shore and have the same facts occur, Mr. Washington falls on Fieldwood equipment, walking up into the galley during the course and scope of his employment. He is not the borrowed servant of Fieldwood, but Mr. Roberts is, under Louisiana's dual employer doctrine, Wood Group would remain responsible as the nominal employer of Mr. Roberts. The law should not and does not change when the accident is moved to an offshore platform, as this court is well aware. The Senate committee report in the adoption of the statutory choice of law provision of the OSLA, which is section 1333A2 of Title 43 of the United States Code, concluded that the inconsistencies with federal law would be another statute of Congress, or a regulation of the Department of Interior. Notably absent from that Senate committee report was any mention of federal common law. And as the court is well aware, during the legislative process that gave rise to OSLA, the Senate and the House expressly concluded that federal maritime law was a violation of the law of the adjacent islands in an upland state. So, where is the potential inconsistency? It can't come from the common law, the federal common law, which is what Wood Group suggests, because that, in fact, was expressly rejected by the US Supreme Court and Chevron oil company, the Hewson. The Supreme Court observed that the entirety of the law of the adjacent state, not just bits and pieces, were to be adopted as federal law under OSLA. In enacting OSLA, the Supreme Court expressly held Congress did not intend that federal courts fill those gaps themselves by creating new federal law. So, to the extent that Wood Group is going to rely on Supreme Court precedent in the Anderson case, or the Denton v. Yazoo Railroad case, or in the Sun Oil Company v. Dowzel towing case, to the extent that those cases represent the federal common law at the time they were decided, the Hewson decision expressly knocks them out of consideration for purposes of determining the applicable federal law on an out-on-continental-shelf platform. More to the point, and I'll get to those cases, they're not clear as to what law they were being decided on, which is unfortunate. Standard Oil Company v. Anderson was a stevedoring case, so the court was either applying the federal common law, but probably more likely the federal maritime law to that case, to the facts of that case. The decision doesn't say, but if it applied the federal common law, we know that doesn't apply via Hewson. If it is applying the maritime law, we know that doesn't apply either, because Oxley says the law of the adjacent state applies. The Denton case either is a federal common law case, or it was decided under Mississippi law. It involved a railroad accident, where a man was injured while loading cargo onto a train. If it's decided under federal common law, again, inapplicable by Hewson. If it's decided under Mississippi law, it's inapplicable because Oxley says the Louisiana law applies. And that same analysis, why Anderson doesn't apply, also applies to the Sun Oil case, because that's either a case involving, it's a case involving pilotage and who's responsible for the accident or the negligence of the pilot, so that's either common law or maritime law. Long story short, Louisiana law is the law that applies. Now, Wood Group may suggest, hold on, the Longshore Act is inconsistent. That's also wrong. As this court explained in McLaurin versus Noble Drilling, in a shipyard case, Section 933A of the United States Code, Title 33, provides that if an injured employee has another law, has another remedy available under any other law against an entity that is not a vessel, as defined by the Longshore Act, is not his employer or is not his co-employee, then he can pursue those rights in federal court or in state court. The issue there was, does Mississippi law provide McLaurin with a claim against co-contractors that were not his co-employees? This court said yes. Section 933A says that's just that. In Fontenot v. Drilling, this court went even further. It said, our court, excuse me, it said, in addressing the interface of Longshore Act Section 933A with the choice of law provisions of 1333A-2, the Fontenot court said Louisiana law cannot be inconsistent with federal law because there would be no third-party cause of action had Louisiana not provided one. I spent a lot of time telling you why federal law is not inconsistent, but let's talk about Louisiana law. Louisiana law has adopted, starting in 1978, and continuing in an interrupted line of cases through 1998, of the dual employer doctrine. In Morgan v. ABC Manufacturer, the Louisiana Supreme Court gave its most recent restatement of that principle and expressly rejected the applicability of the former one-master rule or borrowed-servant doctrine, whereby the general employer of the borrowed servant escapes liability and the borrowing employer is affixed with 100% liability. While the borrowed-servant defense focuses on which employer controlled the employee's actions, modern justification for employer liability is not based so much on the employer's control of the employee's action, but on the concept of enterprise liability. Louisiana doesn't apply control in figuring out which of the employers is responsible for any negligence of the borrowed employee. It concludes both employers are, in the civilian context, solidarily liable. In the common law context, that would be jointly and severally liable. And so it does not matter whether the nominal employer did not exercise direct control. As the Morgan Court concluded, Worktec's failure to exercise direct supervisory control over Heinz should not preclude its liability. The general employer remains liable for the borrowed employee's torts under Louisiana law. And that's because the loaned employees are furthering the business of Wood Group at the same time as they're furthering the business of Fieldwood. We also briefed to the court in the amicus brief why the 1996 amendments to comparative fault and pure comparative fault liability principles were inapplicable because while an employer is solidarily liable with the employee, they are not joint tort feasors. And I would just refer the court to that portion of my brief if it's brought up. All right. Thank you, Mr. Burkow. Thank you. Mr. Everidge. Good morning. And may it please the court, Todd Everidge on behalf of Wood Group PSN. We're here as both direct appellees and cross appellants. Your Honor, I believe that the issues addressed in the direct appeal are pretty thoroughly briefed in the appeal briefs. And therefore, I'm going to be a little brief on our argument on those issues. But I did want to address what the basic issue here is, is the duties that are required of independent contractors for the employees of other independent contractors. This court has issued a long line of consistent rulings in those cases. Most recently, Fournall versus Tetra, which was issued last June, in which the court said that the duty between independent contractors is simply to refrain from gross, willful, or wanton negligence and from creating an unreasonable risk of harm or a hazardous condition. Further, the independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally. In this case, Mr. Washington has not alleged that Wood Group or Mr. Roberts, who is the employee at issue, acted in any way grossly, willfully, or wantonly negligent in his actions on the platform. Additionally, there's been no allegations that Wood Group or Mr. Roberts created the loose step situation that we're talking about here that Mr. Washington tripped over at the galley. The other relevant considerations that the Fifth Circuit has discussed is that a duty can be found between independent contractors if one of the independent contractor's employees shares a contract with or supervises the other employee. Those situations don't exist here. So then, how can you put a duty that could then be breached by Wood Group that they would owe to Mr. Washington? What Mr. Washington is claiming is threefold. One, that Wood Group controlled the steps, actually twofold, excuse me. One, that Wood Group controlled the steps leading into the galley. And two, that we assumed a duty to ensure that the galley steps were safe and free from defect. And they draw on this from an incident that happened several months before when Justin Roberts himself was walking out of the MCC room, another building on the platform, and he noticed that the steps included in the MCC room were loose. And so as he walked down, he noticed they were loose, he investigated them, and he resolved the issue. Because upon notice of this potential hazard, he addressed it. That is his duty on the platform. And so what Mr. Washington uses that example to mean is that that created a duty for Mr. Roberts to inspect all of the steps on the platform to ensure that they weren't loose. They also argue that that shows a certain level of control over the entirety of the platform. But they also refer to Roberts' statement that he was responsible for everything. Well, Your Honor, if that statement, that testimony was taken out of context, the entirety of the questioning in our brief, if you actually go back to it, at his deposition, there was two line of questions that went to Mr. Roberts. One that talked about his duties with regard to repairing defects and addressing hazards that he finds, like the MCC steps, versus his duty to inspect, preemptively inspect, looking for hazards to resolve. And that line of question that's on the Record of Appeal, page 1092, the questions were, question, in this day, the MCC steps slipped and you discovered it was not secured. Correct. The question, you went about securing it. Answer, correct. Question, and that's something that you did, even though you told Mr. Burkhall, I think that it wasn't your job to go around and do that type of thing. Answer, well, I wouldn't say that wasn't my job. That line of question was talking about whether or not it was his job to remedy a hazard that he discovers. And the plaintiff is using that to imply, as you can see throughout their brief, they take, instead of just saying repair, they say inspect, maintain, and repair. They clump all three of those together to say they'd all mean the same thing. But elsewhere in the testimony, Mr. Roberts was specifically asked whether or not his job included to inspect the component parts of the structure, including the stairs, and he said no. And then if you look at the declaration of Mr. James Pena, the Fieldwood person in charge on the platform, he issued a sworn declaration that says my production operators are not tasked with any responsibility to inspect looking for hazards on the platform, but they have a responsibility, should they learn of a hazard, to address it, just like everybody else on the platform does. And so there's a conflation that's going on here between the duty to inspect in advance, which is what Mr. Washington's saying he has, Mr. Roberts has, versus the duty to address a hazard to ensure that it is no longer a hazard. The case cited on the assumption issue, the Boozle case out of Louisiana Supreme Court, the duty that's required when a party assumes a duty that they don't otherwise have is to perform the tasks that they assume with care and with prudence. So arguably, Mr. Roberts, when he elected to address the MCC, the loose MCC steps, is he assumed a duty to secure the MCC steps properly. That can't be imputed into a duty that he assumed across the entirety of the platform. No different than it would be if Mr. Washington, the cook, discovered a spill within his kitchen, cleans it up. Now he's gotten a duty to, he has such a duty does not exist in the law and would be just inappropriate to impute on all the workers on an offshore platform. The Fifth Circuit case law is lengthy. It's consistent. The duties between the independent contractors have long been litigated. Our case falls directly in line with Forno that was issued in June of 2018 with the McCarroll versus Wood Group case in 2014 from the U.S. Fifth Circuit that has very similar facts. And just finally, to address the control issue that was brought up about the Granger case, what Granger says is that the duty of reasonable care does not encompass a duty to eliminate a pre-existing unsafe condition present on the work site over which the independent contractor does not exercise control. The fact that Mr. Roberts repaired the MCC steps was totally appropriate within his job responsibilities and duties, but that doesn't mean that he is now under control of all steps for all time. And so we just argue that each of the points made by Mr. Washington attacking the district court's decision are unfounded both in fact and in law, and therefore we respect for the request that the court affirm the district court's granting of summary judgment on behalf of Wood Group on those issues. Now if I may, I'd like to switch over to the cross appeal. First, I'd like to point out that if the court affirms the district court's dismissal of Wood Group and the summary judgment that was the subject of the direct appeal, that this cross appeal essentially becomes moot. But in the event of a reversal and a remand, our client felt obligated to bring this cross appeal to address an issue that's never been addressed before on the Outer Continental Shelf location. And Mr. Burkall alluded to it, the issue is between the consistency of state law and federal law because the Outer Continental Shelf Lands Act will apply the substantive law of the adjacent state to gap fill so long as it is not inconsistent with applicable federal law. Now we concede that federal statute, federal regulation, primes all. If there is a environment on the OCS, that's what we follow. If it's silent, we look to the adjacent state. If it's federal common law, we look to the adjacent state to see is there an adjacent state statute to apply. If there is, then we apply the adjacent state statute. But the situation we have here is that the dual employer doctrine is not statutory in Louisiana. It is a court made doctrine by Lejeune, Blair, and subsequently Morgan between 1978 and 1998 by the Louisiana Supreme Court. And what that did was it changed the one master rule that had existed for years in Louisiana into a dual employer situation. Now that one master rule system was created by Standard Oil versus Anderson by the U.S. Supreme Court in 1909. And Standard Oil versus Anderson continues to be cited all the way through February of last year by the U.S. Fifth Circuit dealing with situations in which we are looking to the borrowed employer, the borrowed servant doctrine application. And so offshore, one of the applicable borrowed servant tests that has always been used is the Ruiz case. That was from 1969 and the Molosson cases. Those cases spell out the nine factors that apply to determine whether or not an employee is working on behalf of his nominal employer or his borrowed employer. Those nine factors came directly as a result of the 1909 Standard Oil versus Anderson case. And ever since then, the courts have determined offshore who is the responsible employer of that negligent employee. Is it the nominal employer or is it the borrowing employer? And Ruiz has always been used to While I'm on that topic, counsel discussed the inapplicability of Standard Oil versus Anderson because it arose in the admiralty context. Well, the problem is we apply Ruiz and the first sentence of Ruiz says this is a maritime personal injury case. It is an admiralty case as well, at least in jurisdiction, and it applied maritime law. But we still created the borrowed employee test and we still apply it today. And the Ruiz test is a perfect example of another example of when a state's jurisprudential doctrine, because Louisiana has its own borrowed employee doctrine that's created, and a federal court doctrine of borrowed employee, here Ruiz, that was created by the Fifth Circuit. We still, up until two months ago, when there was another Wood Group Fieldwood case, the Mosley case that was issued in February, applied Ruiz, not the Louisiana borrowed employee doctrine. Now, while they're not inconsistent, everyone still relies on the federal court jurisprudential created doctrine. And so our argument here is the Louisiana dual employer doctrine that created is inconsistent with the one master rule that was created by the U.S. Supreme Court in 1909. Now, one of the problems that the dual employer doctrine creates that counsel read in the Morgan decision is about the application of enterprise liability over and above the application of control to the facts of the situation. The Louisiana Supreme Court talked about this enterprise liability issue to where everybody involved who benefits from the work of this allegedly negligent employee who benefits who's involved in that enterprise should bear some sort of liability. Well, the problem is to find that there's actually dual employers, you have to do the full borrowed employee test to know that there's a second employer. And the first factor, the most important factor is control. And Judge Marcus, Justice Marcus on the Louisiana Supreme Court wrote a very long dissent in Morgan talking about the problems that the Morgan dual employer doctrine was going to create as it continued to be implemented after that. And interestingly, since 1998, no court has ever actually applied Morgan to a case. The Louisiana Supreme Court has never even uttered the words enterprise liability again since then. And so, right after Morgan came out, a case came up in the Eastern District called Tillman. And the District Court there refused to apply Morgan to the facts of this case. And in Tillman, what the court said was, if only one employer is involved in the activities out of which the employee's tortious conduct arises, then only that employer may be held liable. And what the dissent said in Morgan and what Tillman followed is that you cannot carve out control from this argument. It made sense in Lejeune in 1978 when the dual employer doctrine was created because the nominal employer held so much control over that employee, it made no sense to let them get to evade liability. Same thing in Blair. And then Morgan came up and started talking about temporary agencies. Now, the argument has been made by Fieldwood and proponents of Morgan that it is an inflexible and absolute doctrine that always keeps the nominal employer on the hook. To me, if you write out the word, the analysis of control, that leads to inequitable results. And that's what Justice Marcus talked about in his dissent with in Morgan. That's why the court in Tillman didn't apply because the facts in that situation didn't warrant it. And that's why the U.S. Fifth Circuit in 2002 in Boston O'Connell, the only time this court has ever reviewed Morgan and the dual employer doctrine also rejected its application. That case involved an accident that happened onshore in Louisiana, which counsel for Fieldwood argues Morgan always applies in those circumstances. The Fifth Circuit declined to apply Boston O'Connell because the borrowed employees at issue had nothing to do with the negligent, the allegedly negligent conduct that occurred. And so the court wasn't willing to keep the nominal employees, nominal employers on the hook simply because they're nominal employers when they have nothing to do with the tortious activity. And so we have two kind of arguments here. One, that OXLA, which requires, which allows the choice of law under OXLA, which allows the adoption of the state court, the state court's laws or the, excuse me, the state's laws to the extent they're not inconsistent with federal law. We argue that there is an inconsistency there between the Louisiana Supreme Court's dual employer doctrine and the U.S. Supreme Court's one master rule created in 1909 and therefore legally it shouldn't apply to the OCS environments. That circumstance in OXLA doesn't apply onshore, so that analysis doesn't need to be made, which is why Morgan can continue to apply onshore. But secondly, if the court does find that the dual employer doctrine can apply offshore, factually in our situation that shouldn't apply for a lot of the reasons we talked about earlier, insofar as the allegedly tortious conduct that resulted in Mr. Washington's accident had nothing to do with Wood Group or their duties on the platform whatsoever. So the barred employer nature between Wood Group and Fieldwood really is irrelevant when it comes to Mr. Washington falling on the galley steps. And finally, there's the issue of application. No court, as I said earlier, has ever applied Morgan and it's gone all the way to conclusion. If you apply the dual employer doctrine and you say that there are two employers who could solidarily be vicariously liable for one negligent actor, there still must be an apportion of fault between those two solidarily vicariously liable employers. What the Louisiana Supreme, what the, excuse me, what the Louisiana Civil Code says is in those situations when that solidary relationship is created by, in a tort situation, you got to go to their viral shares. We say, well, how do I apportion the viral shares between two joint solidarily liable employers? The easy solution is, well, how much did they control the employee? But if we apply the dual employer doctrine that the Louisiana Supreme Court insists we apply, we've already written out the control factor anyway. So it kind of creates a big mess here to where we're all arguing that control is important to create the dual employer situation, but then once it's created, then you say you don't look at the control and then you say, well, now we've got to apportion fault between the two jointly liable, vicariously liable employers. And especially in a situation like here, Fieldwood has conceded, they did not oppose our motion for summary judgment in which we argue that Justin Roberts was their barred employee, that there was exclusive control over him. So then what is Wood Group's liability in that situation? And that is one of the concerns that Justice Marcus had in his dissent of Morgan when you start writing out the control issue and say this enterprise liability trumps all. And so for those reasons, it's Wood Group's position that in the event the direct appeal reverses the district court's ruling on summary judgment and remains the case back, that the court also reverse the interlocutory ruling that the district court issued applying Morgan to this situation and that the original dismissal of Wood Group on the barred employee basis be upheld. Thank you. Thank you, Mr. Average. Mr. Whitmore. Thank you. First, insofar as Wood Group has argued the Fourni and McCarroll and those series of decisions, we've set forth our arguments about that in our brief about why those decisions may or may not be correct. And we ask you to look at those. But what we get back to is that the Wood Group would argue that Fourni and those other cases say that one independent contractor only is liable to the employee of another independent contractor if it employs, shares a contract with, or supervises that employee. That is only a relevant consideration. The base law is that independent contractors owe to each other the duty of ordinary care. And if you go back and look at our brief, if you get back to the point where you say one independent contractor only owes the duty to another independent contractor that it employs, then you're relegated to worker's comp. We're not here on a tort case. If you're talking about sharing a contract, we've cited cases from Louisiana law that say privity of contract is not a requirement. And if we get into supervision, we've set forth how that boils down to the courts taking principles and independent contractor negligence and melding it into this two independent contractors. And that is not the law. And so far as they say that we conflate maintenance, repair, and inspection and cite Mr. Pena, if you look at Mr. Pena, it would appear that no one was tasked with the task of discovering and inspecting and discovering these things. If that's the case, that's another factor of negligence for the jury to consider, whether someone should have been tasked with the task of discovering and correcting these things before someone like Mr. Roberts or Mr. Washington fell on the steps. Otherwise, we may as well go around and stick our heads in the sand and not discover anything. Now, in regard to the borrowed servant, the dual employer, Mr. Everidge cites Tillman. Tillman recognized that there was enterprise liability. And he also cites to Boston v. Old Colony. Boston v. Old Colony is easily distinguished from this case because one of the defendants in that case, Allied, was not in the business of loaning employees. And you take that full circle back to Tillman and other cases, and that gets us to enterprise liability. And the apportionment of fault that Mr. Everidge talked about, we're not even to that point yet. That's a speculative thing because we're here in a summary judgment. We never even got to apportionment of fault. So that's not even to be considered. Thank you for your time and your consideration. Thank you, Mr. McNair. Your case and all of today's cases are under submission.